UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:11CR77-PPS |
| vs. | ) | and |
| | ) | No. 2:16CV94-PPS |
| ARMANDO JOSE VELASQUEZ, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Armando Velasquez is one of 24 members of the murderous, drug-dealing Imperial Gangsters street gang of East Chicago, Indiana who were prosecuted on various charges in this case. On January 10, 2014, Velasquez pled guilty to three counts – conspiracy to participate in racketeering activity, attempted murder in aid of racketeering activity, and use of a firearm during and in relation to a crime of violence. [DE 796, 798.] On July 24, 2014, I sentenced Velasquez to a total term of imprisonment of 305 months. Here's how I got there: Velasquez received a sentence of 185 months on the racketeering conspiracy and 120 months on the attempted murder, to be served concurrent with one another; he also received a sentence of 120 months on the firearm charge to be served consecutive to the other two counts. [DE 1000, 1002.] No direct appeal was taken. Now before me is Velasquez's motion under 28 U.S.C. §2255 seeking to vacate, set aside or correct his federal sentence. Relief under §2255(a) is available for a defendant who can demonstrate "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

Velasquez filed his §2255 *pro se*, raising four grounds for relief. I take up each of the arguments below.

**<u>Issue One: — Compliance with Plea Agreement</u>**

The first issue is whether Velasquez was sentenced in accordance with the terms of the plea agreement and its sentencing stipulation. The plea agreement in this case was a binding one under Fed.R.Civ.P. 11(c)(1)(C) meaning that once I accepted the plea agreement, I was required to follow the terms the parties agreed to as binding on the court. [DE 1821 at 6-7.] The provision of Velasquez's plea agreement binding on the court was his agreement that he would "not receive a sentence that includes a period of incarceration in excess of three hundred and sixty (360) months." [DE 796 at ¶7(h)(i).] The government also agreed that it would recommend that I impose a sentence "equal to the minimum of the applicable guideline range." [*Id.* at ¶7(g)(ii).]

In his statement of Issue One, Velasquez correctly notes that at sentencing, the prosecutor argued for the bottom of the guidelines range, which was 355 months (235 months on the first two counts concurrently plus the mandatory consecutive 120 months on the gun count). [DE 1821 at 6, 14.] The sentence I ultimately imposed was actually *less* – an aggregate of 305 months. For that reason, I share the puzzlement

expressed by the government in its response to Issue One. [DE 1827 at 2.]¹ In his reply memorandum and incomplete supplemental memorandum, Velasquez fails to further address or to clarify Issue One. I can discern no right to relief on Issue One.

**Issue Two: — Credit for State Sentence**

Velasquez complains in Issue Two that he was not given full credit under §5K2.23 of the Sentencing Guidelines for the 76 months he had already served on two Indiana convictions for voluntary manslaughter and for carrying a handgun without a license, both of which were overt acts in the racketeering conspiracy charged in this court.² Section 5K2.23 provided that a downward departure "may be appropriate" if the defendant had completed serving a term of imprisonment for which §5G1.3(b) of the Guidelines would have provided an adjustment if the other sentence had been undischarged at the time of Velasquez's federal sentencing, and that "[a]ny such departure should be fashioned to achieve a reasonable punishment for the instant offense." §5K2.23 U.S.S.G. (2013).

At sentencing I agreed with Velasquez that he should be given appropriate credit under §5K2.23. But as I explained to Velasquez at the proceedings on both his plea of

---

¹ It's worth mentioning that the government's response is equaling puzzling. First, the government treats Issue One as an ineffective assistance of counsel claim, when Velasquez's statement of the issue contains no reference to any failings by his attorney. Second, the government does not invoke Velasquez's appeal waiver as a defense to his §2255 motion which means it has waived the waiver. *See United States v. Kieffer*, 794 F.3d 850, 852 (7th Cir. 2015).

² Again the government treats the ground for relief as asserting a claim for ineffective assistance of counsel [DE 1827 at 2], although, once again, there is no reference at all to defense counsel in Velasquez's statement of his claim [DE 1821 at 4.]

3

guilty and his sentencing, the Sentencing Guidelines are merely advisory rather than mandatory. [DE 1825 at 18-19; DE 1612 at 25.] In any event, the language of §5K2.23 – "*may* be appropriate" and "fashioned to achieve a *reasonable* punishment" – is not mandatory, and does not prescribe a particular arithmetical method of awarding sentencing credit. Instead, the provision leaves much to the discretion of the sentencing judge.

At the sentencing hearing, I explained my Guidelines computation and how I applied credit for the 76 months Velasquez had already served on his related state sentence:

> So the guidelines in this case, as I mentioned, are 235 months to 293 months. He has served 76 months of that time, essentially, which means the guidelines under the way I'm viewing the analysis pursuant to 5K2.23, the range actually is 159 to 217 for the counts not relating to the firearm. When you add in the 120 months that is required as a mandatory minimum, consecutive to the other counts, the total punishment range would be 279 months to 337 months.
> I'm gonna select a point in the middle of that range, which I think is appropriate for all of the aggravating reasons that I've already alluded to on the record; but I have given the defendant a substantial consideration for the time he's already served on that earlier state court conviction.

[DE 1612 at 31.] In other words, I applied §5K2.23 to give Velasquez credit for his state imprisonment in the manner I deemed appropriate to achieve a reasonable sentence. Velasquez does not demonstrate any error in my application of §5K2.23, and certainly does not demonstrate any basis for relief on a motion to vacate under §2255.

**Issue Three: — Computation of Offense Level**

Beginning under Issue Two and continuing in Issue Three, Velasquez argues that his "correct base level is 37, not 38 from grouping," and with a criminal history category of IV, his guideline range prior to departure should have been 210 to 262 months, rather than 235 to 293. [DE 1821 at 7-8.] Velasquez challenges the PSR's multiple count adjustment and the resulting total offense level. This argument is the kind of bread-and-butter Guidelines application issue that is not cognizable as a claim under §2255. Ordinarily, in the post-*Booker* era in which the Sentencing Guidelines are not mandatory, relief is not available under §2255 for errors in Guidelines calculations unless the error is of constitutional dimension. *Hawkins v. United States*, 706 F.3d 820, 826, 828 (7th Cir. 2013) (*Hawkins I*), citing *Welch v. United States*, 604 F.3d 408, 412 and n.4 (7th Cir. 2010); *Hawkins v. United States*, 724 F.3d 915, 916 (7th Cir. 2013) (*Hawkins II*). Velasquez's argument "involves no claim of constitutional error," but is "just a claim that the sentencing judge miscalculated the advisory guidelines range and *might* have given a lower sentence had he not miscalculated it." *Hawkins II*, 724 at 916-17. This kind of claim could've been made at sentencing (but wasn't), or been raised on direct appeal (unless waived), but can't be brought under §2255. *Hawkins I*, 706 F.3d at 824.[3]

In any event, the PSR correctly computes the multiple count adjustment. Under U.S.S.G. §2E1.1(a)(2) the offense level for racketeering is the offense level for the underlying racketeering activity. There were three acts of racketeering in Velasquez's

---

[3] I could have disposed of Issue Two on this same basis, but chose to address the merits to explain how I exercised my sentencing discretion in granting Velasquez credit for his related state sentence.

case – one involving voluntary manslaughter where the adjusted offense level was 29. [DE 919 at ¶35.] The second act involved the unlawful possession of firearm which yielded an offense level of 14. [*Id.* at ¶41.] And the third act involved an attempted murder in aid of racketeering where the adjusted offense level was 37. [*Id.* at ¶47.] So the adjusted offense level was a 37 (using the group with the highest offense level) and then one point was added under the unit analysis in U.S.S.G. § 3D1.4 for a total adjusted offense level of 38. [*Id.* at ¶53.] There was no error in the Guideline computation as Velasquez contends.

To the extent that Velasquez is arguing that by accepting the plea agreement I bound myself to the government's recommendation to sentence him at the bottom of the Guidelines range [DE 1821 at 5], he misunderstands the scope of what was binding on me. The parties' stipulation that the sentence could not be more than 360 months was the portion of the agreement that became binding on the court once I accepted the agreement. [DE 796 at ¶7(h).] *See* Fed.R. Crim. P. 11(c)(1)(C). But, as the document itself clearly states, the government's agreement to recommend a sentence "equal to the minimum of the applicable guideline range" was an agreement between the parties only, and "not binding upon the Court." [*Id.* at ¶7(g).] So this provision of the plea agreement was governed by Rule 11(c)(1)(B). In any event, given the Guidelines range that I determined applied to Velasquez, the sentence I imposed actually represented a significant departure *below* the bottom of the range, from 355 months to 305 months. Velasquez demonstrates no right to a sentencing reduction based on Issue Three.

**Issue Four: Ineffective Assistance of Counsel re *Peugh* Appeal**

Velasquez contends in Issue Four that his attorney should have taken a direct appeal to raise his claims of sentencing error in the multi-count adjustment (in effect, Issue Three). Velasquez represents that he "advised" his counsel "of his duties to appeal or place a motion to withdraw and be relieved by the Court of Appeals." [DE 1821 at 6.] This issue is a non-starter because Velasquez waived his right to appeal in his plea agreement: "I expressly waive my right to appeal or to contest my conviction and all components of my sentence, or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground..." [DE 796 at ¶7(h)(i).] I carefully reviewed the waiver with Velasquez at his change of plea proceeding, and he affirmed that he understood its ramifications. [DE 1825 at 15-16.] He also represented that the was giving up those rights knowingly and voluntarily, and not as a result of coercion of any kind. [*Id*. at 16-17.]

The Seventh Circuit has held that "once a defendant has knowingly and voluntarily waived his right to appeal both in a plea agreement and in court under Rule 11(b), the Sixth Amendment does not require an attorney to disregard the waiver by complying with the defendant's request to file an appeal." *Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016), citing *Nunez v. United States*, 546 F.3d 450, 456 (7th Cir. 2008). So whether or not I believe Velasquez's suggestion that he directed his attorney to file a notice of appeal, "where there is an appeal waiver, the attorney can choose not to appeal, even though there has been a request." *Nunez*, 546 at 456.

The appeal waiver has this impact on Issue Four even though the government has not invoked the waiver in defending against Velasquez's §2255 motion generally. The waiver was nonetheless validly in place immediately after sentencing when defense counsel was asked to take an appeal. Defense counsel's obligations were framed by the state of affairs then existing, without counsel having to anticipate the possibility that the government might later "waive the waiver" after a §2255 motion was filed. There are a number of possible limitations on the ramifications of an appeal waiver, as enumerated in *Solano*, 812 F,3d at 577-78. But in that case as here, none of those limitations applies. Velasquez says he merely wanted Mr. Nagelberg (his counsel) to appeal the multi-count grouping computation [DE 1821 at 5-6], and the enforceable appeal waiver clearly encompassed this non-constitutional Guidelines issue. Issue Four's ineffective assistance of counsel claim is defeated by Velasquez's valid waiver of the right to appeal. In any event, for the reasons stated in Issue Number 3 above, counsel was not ineffective for not taking an appeal of the multi-count grouping issue, because there was no error in the computation.

Also within Issue Four, Velasquez invokes the Supreme Court's decision in *Peugh v. United States*, 133 S.Ct. 2071 (2013). As the Seventh Circuit has explained, "*Peugh* tells us only that the advisory nature of the guidelines in the present era, the *Booker* era, which allows the sentencing judge broad discretion, nevertheless does not excuse *constitutional* violations arising from the judge's miscalculating the applicable guideline." *Hawkins II*, 724 F.3d at 917. Velasquez's quarrel with the offense level

computation and concerning which portions of the plea agreement were binding on me do not raise constitutional questions, and the *Peugh* decision doesn't support any relief for Velasquez under §2255.

**Issues Raised in Reply**

In his reply brief, Velasquez raises several new claims unrelated to the grounds for relief enumerated in his motion. He "attacks the findings of fact regarding his role in [a] shooting," and disputes whether the shooting "should have been considered at his sentencing." [DE 1849 at 3.] Citing *Lafler v. Cooper*, 132 S.Ct. 1376 (2012) and *Missouri v. Frye*, 132 S.Ct. 1399 (2012), he makes allegations about his counsel's explanation of the plea agreement. [DE 1849 at 4.] Arguments raised for the first time in reply are considered waived, and I will not address them further. *United States v. Kennedy*, 726 F.3d 968, 974 n.3 (7th Cir. 2013); *United States v. Alhalabi*, 443 F.3d 605, 611 (7th Cir. 2006).

**Certificate of Appealability**

Finally, I must consider whether to grant Velasquez a certificate of appealability on any of his claims. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULES GOVERNING SECTION 2255 PROCEEDINGS 11(a). "A certificate of appealability may issue... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To obtain a certificate of appealability, Velasquez must show that reasonable jurists could debate whether his petition should have been resolved differently. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). I am entirely unpersuaded

that reasonable jurists could reach opposite conclusions about Velasquez's right to relief on the grounds asserted in his motion under §2255, and I will deny a certificate of appealability.

## Conclusion

Armando Velasquez received a below-Guidelines sentence that was less than the binding sentencing cap in his plea agreement. For all the reasons above, Velasquez's motion under §2255 will be denied.

**ACCORDINGLY:**

Armando Velasquez's motion to vacate, set aside or correct his sentence under §2255 [DE 1821] is DENIED.

A certificate of appealability is DENIED.

**SO ORDERED** this 11th day of October, 2016.

/s/ Philip P. Simon
**Chief Judge**